## BROOKS *v.* STATE

[No. 252, September Term, 1963.]

24

*Decided May 7, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*J. Franklyn Bourne* for appellant.

*Russell R. Reno, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Arthur A. Marshall, Jr.* and *James H. Taylor, State's Attorney* and *Assistant State's Attorney,* respectively, *for Prince George's County,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The principal question presented by this appeal is whether a search incident to one offense justified the seizure of items connected with another offense.

About 10:30 in the morning of February 27, 1962, the defendant (Alfonso Arkell Brooks, Jr.) went to the home of Margaret Griffith in Upper Marlboro, asked her where someone lived and told her he was interested in buying race horses. At that time she observed that the automobile of the defendant was of a dark color. Later (about 11:00 o'clock), when she went to her kitchen to prepare dinner, she noticed a similar dark colored automobile at the home of a neighbor. When Allen N. Curtin (the neighbor) came home from work later in the day, he found that a screen had been removed from one of the windows and upon entering the house he discovered that his television was missing and that some packaged hogmeat labeled with his surname had been taken from the freezer.

A week or so prior to the arrest of the defendant, the Prince George's County police sent a circular to the District of Columbia police stating that the owner or operator of a 1950 Chrysler, with D. C. tags numbered MT628, was wanted in connection with a series of housebreakings. The district police checked the license number and learned that it had been issued for a Buick automobile registered in the name of the defendant whose address was given as 615 Gallatin Street, Washington, D. C.

The defendant was arrested on the night of March 8, 1962. In the morning of the next day, the police, under a warrant to search the premises at 615 Gallatin Street, recovered thirteen packages of hogmeat labeled "Curtin" from a freezer in the basement of the house where the defendant resided with Mary Pace. Subsequently the defendant was indicted for statutory burglary, grand larceny and receiving stolen goods.

At the trial, besides the testimony of the owner of the stolen hogmeat and the witness who had twice seen a dark colored automobile on the day of the theft, the State introduced the testimony of a number of police officers who testified as to the arrest of the defendant and the search of the premises from which the hogmeat was recovered. On the theory that it had been illegally seized, the defendant objected to the admission of the testimony relating to the recovery of the hogmeat, but the objection was overruled. At the close of the case, the defendant moved to strike the evidence admitted over his objection, but the motion was denied. The lower court, sitting without a jury, found the defendant guilty on the first and second counts of the indictment and sentenced him to eight years in prison.

The circumstances leading to the arrest of the defendant and the search for and seizure of the hogmeat on the premises in which he resided are:

At approximately 9:00 o'clock in the evening of March 8, 1962, while an officer of the district police accompanied by a deputy sheriff of the county were patrolling the area of Gallatin Street, they saw a Chrysler automobile, with D. C. tags MT628, parked at the curb. The automobile was locked but with the aid of a flashlight the deputy sheriff could see pieces of merchandise covered with a blanket lying in the back of the automobile from which the rear seat had been removed.

A call was made for another police car and for police detectives. When the car arrived, all of the police officers sat in it awaiting developments. Shortly before the arrival of the detectives, the officer on patrol duty, who knew the defendant, saw him pass by, glance at the police car, and continue on. A short time after the detectives arrived, the defendant passed by again. One of the detectives suggested to the officer on patrol duty that he call out "Brooks, come here."

When the defendant approached the police car, he was asked if the Chrysler was his and he replied "yes." When he was asked for his registration card, he stated that it was in the glove compartment and promptly unlocked the automobile and got the card. When the deputy sheriff examined the card, he asked why Buick tags were on the Chrysler and the defendant told him that he had disposed of the Buick and transferred the tags

28

to the Chrysler without notifying the licensing authorities. When he was questioned about the merchandise in the back of the automobile, he stated that he was "holding it for a friend," but later he explained that he had bought the merchandise cheap because he knew that it had been stolen. And when he was asked if the police could look at what was in the automobile, the defendant opened a door and allowed them to examine the articles lying in the back. The defendant was then arrested and taken to the sixth precinct police station, where he was apparently interviewed but the record does not disclose what if anything he may have told the police at the station.

On the following morning, a police detective from the county furnished a police detective from the district with information concerning another housebreaking in Prince George's County and a list of the articles taken from the house, and the two of them proceeded to the Municipal Court of the District of Columbia and obtained a search warrant from the presiding judge authorizing a search of the premises at 615 Gallatin Street.

Armed with the search warrant, the police detectives went to the premises to be searched and served the warrant on Mary Pace who admitted that the premises were hers and that the defendant stayed with her in a relationship described by the police as that of a "boy friend" and "girl friend."

The entire house was searched for the items described in the affidavit attached to the application for the search warrant, but none was found. Instead the police detectives found a number of other items of stolen property, including the packages of hogmeat labeled "Curtin," the testimony as to which was objected to by the defendant.

In essence the six interrelated contentions made by the defendant on appeal present only two questions: (i) whether the testimony concerning the recovery of the hogmeat was admissible; and (ii) whether there was sufficient evidence to support the conviction of the defendant of statutory burglary and grand larceny.

(i)

The primary contention is that the seizure of the hogmeat was illegal because the item was not listed in the affidavit at-

tached to the application for the search warrant. The general rule is that property other than that for which a search is being made under the authority of a search warrant cannot be seized under the authority of that warrant because it does not come within the description of the warrant. See *People v. Pruess,* 195 N. W. 684 (Mich. 1923) ; *Marron v. United States,* 275 U. S. 192 (1927). The rule is otherwise, however, when an executing officer, upon entering the premises under a valid search warrant, finds thereon contraband or property, the possession of which is illegal and constitutes an offense against the state or government. See the annotation, *Search and Seizure—Different Offense,* 169 A.L.R. 1419, 1424. Under the latter circumstances, the officer has a right to seize such property even though it was not described in the search warrant. In *Allen v. State,* 178 Md. 269, 13 A. 2d 352 (1940), it was held that a lottery book was within the purview of property authorized to be seized by a search warrant authorizing the seizure of "any and all race track and bookmaking paraphernalia." Cf. *Braxton v. State,* 234 Md. 1, 197 A. 2d 841 (1964) and cases cited, wherein a seizure made after lawful arrest was held legal. The cases in other jurisdictions, both state and federal, have been more to the point. In *Williams v. State,* 61 So. 2d 793 (Miss. 1953), where the officers lawfully entered premises under a warrant to search for a still and intoxicating liquor and while there discovered and seized articles they knew had been stolen, it was held that the stolen property was admissible in evidence as an exception to the general rule (excluding property not listed in the search warrant) because it was of a contraband nature. To the same effect, see *Joyner v. City of Lakeland,* 90 So. 2d 118 (Fla. 1956) ; *Robertson v. State,* 221 S. W. 2d 520 (Tenn. 1949) ; *State v. McKindel,* 268 Pac. 593 (Wash. 1928). See also 1 Varon, *Searches, Seizures and Immunities,* Ch. VII, § 9, p. 402, *et seq.* Among the federal cases in this area, see *Johnson v. United States,* 293 F. 2d 539 (App. D. C. 1961) ; *Sanders v. United States,* 238 F. 2d 145 (10th Cir. 1956) ; *Palmer v. United States,* 203 F. 2d 66 (App. D. C. 1953) ; *United States v. Howard,* 138 F. Supp. 376 (D. C. Md. 1956). In *Harris v. United States,* 331 U. S. 145 (1946), it was said (at p. 155) :

"If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property, the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated."

See also *Bryant v. United States*, 252 F. 2d 746 (5th Cir. 1958), where it was said in effect that "the fruits of crime such as stolen property" may be legally seized notwithstanding that the search warrant fails to describe such articles.

In the case at bar, where the officers had reasonable cause to infer that the packaged hogmeat labeled "Curtin" found on the premises of a suspected thief named "Brooks" was stolen property, we think the officers were justified in believing that it was the fruit of a crime and in seizing it as such. The mere fact that the packages of hogmeat were not listed as stolen property in the affidavit supporting the search warrant would not render inadmissible the testimony concerning the recovery thereof on the ground that the hogmeat was a product of an illegal search and seizure. See *United States v. Gearhart*, 326 F. 2d 412, 414 (4th Cir. 1964), where it was said that the invalid warrants "did not enlarge the officers' authority nor did they diminish it; they did not lessen the defendant's rights, and we perceive no reason for saying they expanded his immunities."

The defendant also contends that the evidence was inadmissible because the search was exploratory and the seized property was not turned over to the United States Marshal as was required by the laws of the District of Columbia. This too lacks merit. This is not a case where officers entered premises ostensibly for the purpose of making an arrest but in reality were conducting an exploratory search for evidentiary material tending to connect the accused with some crime. See for example, *United States v. Lefkowitz*, 285 U. S. 452 (1932); *Go-Bart Importing Company v. United States*, 282 U. S. 344 (1931). Rather, in the instant case, the information the officers had was such as to indicate that the defendant was guilty of

breaking and entering the home of another victim. The search was not an exploration for incriminating evidence but was specifically aimed at recovering the various articles listed in the search warrant. *Harris v. United States, supra; United States v. White,* 122 F. Supp. 664 (D.C. D.C. 1954). Nor did the failure to comply with the statute (Title 23-302 of the D. C. Code), requiring delivery of property seized under a search warrant to the marshal, render the testimony concerning the hogmeat inadmissible. Actually, the hogmeat was turned over to the property clerk at police headquarters, who, instead of delivering it to the marshal, delivered it to the county police officers (who were then in the District of Columbia) and they returned it to the rightful owner from whom it had been stolen. Clearly the defendant was not prejudiced by what was done. Moreover, failure to strictly adhere to ministerial matters such as this does not invalidate an otherwise valid search and seizure. See *Williams v. State,* 240 P. 2d 1132 (Okla. Cr. 1952); *Evans v. United States,* 242 F. 2d 534 (6th Cir. 1957), *cert. den.* 353 U. S. 976 (1957); *United States v. Greene,* 141 F. Supp. 856 (D.C. D.C. 1956); *United States v. Romano,* 203 F. Supp. 27 (D. C. Conn. 1962).

The defendant further objected to the admissibility of the evidence because it was not shown that he was in possession of the stolen property. In support of the objection, he contends that he occupied a room on the second floor of the building and did not have any control over the freezer in the basement where the hogmeat was found. This contention, like the others, is also without substance. There was no testimony as to the extent of the defendant's occupancy of the premises. The owner admitted that the defendant stayed with her, and the record discloses that there was a "boy friend-girl friend" relationship between them. There is therefore nothing in the record to indicate that the defendant did not have access to the entire house, including the basement, and access to, if not control over, the freezer from which the hogmeat was recovered. Under these circumstances, we think it reasonable to infer that he was in possession of the stolen property. Cf. *Polansky v. State,* 205 Md. 362, 109 A. 2d 52 (1954), where it was said that manual

possession by an accused is not necessary to constitute receiving stolen goods as long as he obtains a measure of control or dominion over them.

There is nothing in the record to support the only other objection to the evidence to the effect that the affidavit attached to the application for the search warrant was based on information obtained from an illegal questioning of the defendant. The information the police obtained before his arrest was clearly not illegal. What, if anything, the defendant may have told the police at the precinct station—other than that he had bought the merchandise he had in his automobile from someone at the municipal dump—is not shown by the record. The defendant indicates in his brief that the county police detective talked to him shortly after he was taken to the precinct station and again on the next morning before application for the search warrant was made, but he offered no evidence as to what he had told the detective. If the defendant gave the police other information he should not have been required to divulge on either of those occasions, he should—either on cross-examination or by calling them as a witness in his behalf—have elicited the substance of the information he alleges was illegally obtained by them from him. Since he did not, the question raised here cannot be considered.

We hold that the testimony concerning the recovery of the hogmeat was admissible.

(ii)

Besides contending in general that the evidence was legally insufficient to convict him of statutory burglary and grand larceny, the defendant also contends that the quantum of proof was insufficient to warrant his conviction for grand larceny. He recognizes that in Maryland "the possession of personal property recently stolen creates a presumption of fact that the possessor was the thief." See *Stapf v. State*, 230 Md. 106, 108, 185 A. 2d 496, 497 (1962), and cases cited therein. But he argues that the presumption should not apply in this case because the unexplained exclusive possession of the stolen hogmeat (although it was evidence to be considered) did not raise a presumption of law in the District of Columbia as it does in

Maryland. The argument is not sound. Actually, in the District of Columbia as in Maryland the possession of recently stolen goods raises an inference of fact, not a presumption of law, that the possessor is the thief. Compare what was said in *Gilbert v. United States,* 215 F. 2d 334 (C.A. D.C. 1954), at p. 336, with what was said in *Jordan v. State,* 219 Md. 36, 148 A. 2d 292 (1959), at p. 46. So, even without deciding the law of which jurisdiction is to be applied, it is clear that the unexplained recent possession by the appellant of the hogmeat was sufficient to warrant his conviction of grand larceny.

We hold therefore that the evidence was sufficient to convict the defendant of grand larceny as well as statutory burglary.

*Judgments affirmed.*