MARQUES t/a Glen News Bookstore *v.*
STATE OF MARYLAND

[No. 80, September Term, 1972.]

*Decided January 4, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Bernard P. Jeweler*, with whom were *Gordon H. Levy* and *Edelman, Levy & Rubenstein* on the brief, for appellant.

*John P. Stafford, Jr., Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Edward F. Borgerding, Assistant Attorney General, Raymond G. Thieme, Jr., State's Attorney for Anne Arundel County*, and *David R. Cutler, Assistant State's Attorney for Anne Arundel County*, on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

In October 1971, as an adjunct to his Glen Burnie bookstore, the appellant (Marques) was operating, for the

delectation of the local yeomanry, a battery of "peep-shows" all conceded to be hard-core pornography and none bearing the seal of the Maryland State Board of Censors. Since the law frowns upon this sort of thing, Code (1971 Repl. Vol.), Art. 27, §§ 417, 418 and 418A; Art. 66A (1970 Repl. Vol.), the police looked into Marques's activities and, in January 1972, the State's Attorney mounted an attack against him which was successful below. Whence comes this appeal.

The State's initial sortie took place on 18 January 1972. It consisted of the issuance of an arrest warrant, a search warrant, an order requiring Marques to show cause within three days why the search warrant should not be executed, and an order temporarily restraining him from "disposing of, relinquishing possession of, or in any manner cutting, altering, splicing, destroying or mutilating . . . [11 motion picture films] for a period of 4 days or until the conclusion of the hearing [set for 21 January]." The warrants and the orders were served upon Marques on the same day, 18 January.

On 24 January the State moved for an extension of the temporary restraining order. The ensuing order of court, passed that same day, recites that the court had been "advised as follows." There follow brief descriptions of ten of the eleven "peep-show" films and descriptions of two eight millimeter films sold by Marques to a policeman. Excerpts from the court's order follow:

"WHEREAS, immediately prior to a scheduled hearing before the undersigned . . . [set for 2:00 p.m., 21 January] counsel for . . . [Marques] appeared with the State's Attorney . . . and requested clarification of the nature of the proposed hearing as well as additional time in which to prepare his client's case, and

"WHEREAS, it was agreeable with all parties present that such postponement be afforded and that the hearing when held, would be de-

signed as an adversary hearing before a judicial officer of this court for the purpose of determining whether or not the aforementioned motion picture films were actually obscene and subject to seizure by the peace officers of this county, and whether or not . . . [Marques] by virtue of . . . [his] possession and display of said allegedly obscene film . . . [is] in fact, subject to arrest for possible violation of Article 27 section 418 . . . .

"Now, therefore, it is this 24th day of January, 1972, by the Circuit Court for Ânne Arundel County, in Equity, ORDERED that . . . [Marques and his employees] be, and the[y] . . . are hereby restrained from disposing of,· relinquishing possession of, or in any manner cutting, altering, splicing, destroying or mutilating the aforementioned motion picture film as described in subparagraphs 2a-k [actually 2a-j] for a period to extend to and inclusive of February 3, 1972; unless counsel for . . . [Marques has] prior thereto filed joinder of issue and [has] request[ed] a hearing within one day thereof and unless otherwise temporarily extended.

"This cause, unless prior thereto . . . [Marques] move[s] for hearing upon one day after joinder of issue, shall stand for hearing . . . at 10 A.M. on February 3, 1972, at which time . . . [Marques] is ordered to produce in court the films more particularly described in subparagraphs a through k [actually a through j] inclusive aforementioned.

"It is hereby further ORDERED that the search and seizure warrant . . . [issued 18 January] . . . be, and the same is hereby quashed.

"It is further ORDERED that the arrest warrant . . . [issued 18 January] be, and the same is hereby quashed and the bond remitted to . . . [Marques].

"It is further ORDERED that the show cause order . . . [issued 18 January] and directed to . . . [Marques] is hereby stricken.

"It is further ORDERED that pending the hearing on February 3rd, 1972 . . . [the State] shall be temporarily restrained from committing any threats of arrest of . . . [Marques] relating to the possession, sale, or distribution of said material hereinabove listed.

"And it is further ORDERED that . . . [the police] are hereby temporarily restrained from harassing, threatening to arrest or otherwise persecuting [Marques] in any manner . . . [in his] operations pending the outcome of the hearing hereon . . . ."

It should be observed that all of the motions, petitions and orders so far mentioned bear the identification "No. 20,707 *Equity*." (Emphasis added.)

On 25 January the assistant State's Attorney filed, on behalf of the State, a petition in No. 20,707 Equity praying the issuance of "an injunction pursuant to Article 27, Section 418A." Additionally, after stating "the grounds for said petition," the State, in its prayer for relief, asked the court

(a) to enjoin the "further display, distribution or exhibition" of the films or copies thereof,

(b) to order the surrender of the films to a peace officer,

(c) to order the films to be held by the State as evidence of violations of § 418,

(d) to order the destruction of the films, pursuant to § 418A after their use as evidence of violations of § 418,

(e) to grant such other and further relief, etc.

Upon this petition the court, on the same day, passed a show cause order. At 9:43 a.m., on 3 February, Marques moved to dismiss the extension of the temporary restraining order passed 25 January. He recited the allegation in the motion for the extension of the temporary restraining order "that there is pending an application for a Search and Seizure Warrant based on sworn affidavits of officers of the Anne Arundel Police Department and [that] there is probable cause to believe that . . . [Marques is] violating" § 418. He went on to recite that the motion and the "order itself ostensibly were filed in . . . Equity under Section 418A . . . [which] being civil in nature, [he] therefore, is not subject to criminal prosecution . . . . Wherefore [he says] the [pending] Application for Search and Seizure Warrant and the affidavits thereon [should] be dismissed so that . . . [he] can be guaranteed a prior adversary hearing to determine whether the alleged material is legally obscene by a judicial determination." The case came on for a hearing at 10:00 a.m., without any action having been taken on Marques's motion. At the conclusion of the hearing on 4 February the court found the films to be "hard core pornography and obscene as a matter of law." The court "reiterate[d] that these proceedings are *strictly civil* in nature" and he cautioned against construing anything in his oral (and later written) opinion as reflecting his impression in respect of the guilt or innocence of Marques, his "finding having dealt *solely* with . . . [the films]." (Emphasis added.)

By its order, signed and filed later the same day (4 February), the court adjudged the films to be "obscene within the meaning of" §§ 418 and 418A and restrained their "further exhibition, distribution or display." The concluding paragraphs of the order are as follows:

"It is further ORDERED that . . . [Marques] give over to the . . . [police] each copy of such films . . . for the use of the State . . . as evidence of violation of . . . § 418 . . . to be held by the State until the usefulness of said films as evidence be ended.

"It is further ORDERED that the State destroy said films in accordance with . . . § 418A . . . after the usefulness of said films as evidence be ended."

On 10 February (six days after the filing of the order of 4 February) Marques filed his answer to the petition for injunction filed 25 January. He denied the allegation in the paragraph relating to the sale of two films to the police and he denied that all of the films constituted violations of § 418. He admitted that the hearing was "presumed to be an adversary hearing for the purpose of determining whether or not the . . . films are in fact obscene" but he stoutly declared that he could not "be subjected to arrest for possible violation of . . . § 418 . . . because § 418A . . . is several in nature and therefore does not subject . . . [him] to the criminal prosecution."

Ten minutes later (on 10 February) Marques filed his appeal from the "orders and injunctions entered . . . on January 18 . . .; entered, extended and re-instituted on January 21 . . . and on February 4 . . . ."

Marques harangues us with the sort of cant we have come to expect in obscenity cases. While vaunting the obscenity of his films he drapes himself in a toga run up from patches of the First Amendment [1], the Fifth Amendment, the Fourteenth Amendment, a hankering for a

---

[1] Obscenity is beyond the pale of First Amendment protection. Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L.Ed.2d 1498 and Alberts v. California, 355 U. S. 852, 78 S. Ct. 8, 2 L.Ed.2d 60 (1957); Monfred v. State, 226 Md. 312, 173 A. 2d 173 (1961), cert. denied, 368 U. S. 953 (1962); Donnenberg v. State, 1 Md. App. 591, 232 A. 2d 264 (1967).

jury trial and the dolours he says are born of the denial thereof, impermissible prior restraint, and the denigration of § 418A. We think these complaints were laid to rest in *Village Books, Inc. v. State's Attorney for Prince George's County,* 263 Md. 76, 282 A. 2d 126 (1971). However, we see some merit in his contention that although he may be vulnerable to attack under § 418 or § 418A, the State may not proceed against him simultaneously under both. For the most part we shall confine our discussion to that aspect of the case.

The trial judge thought, because in *Village Books* we declared § 418A to be a virtual carbon copy of the New York statute, that the comment of Mr. Justice Frankfurter, in *Kingsley Books, Inc. v. Brown,* 354 U. S. 436, 77 S. Ct. 1325, 1 L.Ed.2d 1469 (1957), provides support for his notion that the State may proceed under both §§ 418 and 418A at the same time. Mr. Justice Frankfurter said, for the Court:

> "It is not for this Court thus to limit the State in resorting to various weapons in the armory of the law. Whether proscribed conduct is to be visited by a criminal prosecution or by a qui tam action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice. [Citation omitted.] If New York chooses to subject persons who disseminate obscene literature to criminal prosecution and also deal with such books as deodands of old, or both, with due regard, of course, to appropriate opportunities for the trial of the underlying issue, it is not for us to gainsay its selection of remedies." 354 U. S. at 441.

As we see it Mr. Justice Frankfurter did no more than say that the several states have a free hand in this regard; that they are not limited in the choice of weapons. If, however, a state elects to limit the manner in

which its weapons are to be used we know of no reason why it should not be free to do so. We think the General Assembly intended § 418A to be exclusively civil in nature and, by necessary implication, that it may not be subverted to uses ancillary to a criminal proceeding.

Section 418A was first enacted by Chapter 382 of the Acts of 1961. It is described in the title as an act to provide "for the creation, institution and maintenance of injunction proceedings to restrict the sale or distribution . . . [of] obscene books [etc.] . . . *all* of said section relating to the *creation of said injunctive remedy.*" (Emphasis added.) The only mention of § 418 will be found in paragraph 1 of § 418A where the word "obscene" is defined to be "within the meaning of Section 418 of this Article [27]." The only sanction which may be imposed, apart from the issuance of an injunction, is a direction, in the order or judgment, to the defendant "to surrender to . . . the sheriff . . . [the obscene] matter" together with a direction to the sheriff *"to seize and destroy the same."* If the Legislature had intended the obscene matter to serve an evidentiary purpose before its destruction it could quite easily have said so. That it did not so intend acquires additional plausibility in that seven years later, by Chapter 619 of the Acts of 1968, it repealed § 418A and re-enacted it. To be sure, it was re-enacted "with amendments," but the only amendment was the addition of the phrase "including a motion picture film or showing."

Today's holding might make us a bit uneasy if, by its election to proceed under § 418A, the State thereby had foreclosed the initiation of any other or further actions against Marques, whether civil or criminal. But we think the State is not helpless. There seems to be no dispute about the sale to a policeman of two films [2] conceded to be hard core pornography. We think they are and the trial judge so found. Both were purchased well before

---

2. Identified in Paragraph 3a and 3b of the order of 24 January 1972.

this case was docketed, the first on 25 October 1971, the second on 7 January 1972. They no longer belong to Marques. They have been, since their purchase, the property of the State. They are not necessarily subject to destruction under § 418A. We think either of them well might provide the basis for criminal action against Marques.

Moreover, we see no reason why the State cannot prosecute Marques for violating § 2 of Art. 66A. It was conceded at argument that none of the films had been submitted to the Maryland State Board of Censors for approval. *Sanza v. Maryland State Board of Censors*, 245 Md. 319, 226 A. 2d 317 (1967), swept away any doubt that the films used for the "peep shows" are within the purview of Art. 66A. The same result was reached a short time ago by Judges Sobeloff, Blair and Young in *Star v. Preller*, Civil No. 72-27-Y (D.C. Md. October 1972).

The complaint that the signing of the petition for an injunction by an assistant State's Attorney was a violation of § 418A is without merit. *Moxley v. State*, 212 Md. 280, 285, 129 A. 2d 392 (1957). The same is true of Marques's final contention that Maryland Rule 707 f 2 has been violated.[3] If true his redress, if he has any at all, lies in an application to the circuit court for the citation of the violator.

Since we think it was error for the learned trial judge to direct the sheriff to postpone the destruction of the "peep show" films until their usefulness as evidence of a violation of § 418 "be ended," we shall reverse that aspect of his order of 4 February 1972. The remainder will

---

3. "A person who discloses, prior to its execution, that a search warrant has been applied for or issued, except so far as may be necessary to its execution, or a public officer or employee who discloses, after the execution of a search warrant the contents of the warrant or any other papers connected therewith including an inventory, except by service pursuant to this Rule or by court order pursuant to section e of this Rule, may be proceeded against for criminal contempt of court."

be affirmed. However, since the 11 "peep show" films are still in the possession of the State it will not be necessary for the sheriff to seize them; a direction to destroy them should suffice.

> *Reversed in part and affirmed in part.*
>
> *Remanded for the passage of an order conformable to the views expressed in this opinion.*
>
> *Costs in this Court and in the court below to be paid by the appellant.*