## ISAAC NEWTON JOHNSON AND CHARLES TERRELL WALTERS *v.* STATE OF MARYLAND

[No. 663, September Term, 1975.]

*Decided March 3, 1976.*

The cause was argued before THOMPSON, MOYLAN, MENCHINE and LOWE, JJ.

*Paul Mark Sandler*, with whom were *Cohan, Altman & Sandler* on the brief, for appellant Charles Terrell Walters. Submitted on brief by *Julius E. Schindler, Assigned Public Defender*, for appellant Isaac Newton Johnson.

*Alexander L. Cummings, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, John S. Hollyday, State's Attorney for Washington County, Darrow Glaser, Deputy State's Attorney for Washington County* and *Robert W. Hamilton, Deputy State's Attorney for Washington County* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Because the use of prior offenses in cross-examinations to impeach criminal defendants who choose to testify has been limited to criminal convictions, *Mason v. State*, 242 Md. 707, 710; *Robinson v. State*, 4 Md. App. 515, 532-533, it does not mean that the same limitation applies to the impeachment

on cross-examination of all witnesses. Indeed, Cts. Art., §10-905 provides:

"(a) *In general.* — Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime. Evidence of conviction is not admissible if an appeal is pending, or the time for an appeal has not expired, or the conviction has been reversed, and there has been no retrial or reconviction."

This limitation has been applied in both civil [1] and criminal [2] cases. However, this rule is sometimes mistakenly interpreted to mean that evidence of anything other than a criminal conviction is never admissible. In *Neam v. State*, 14 Md. App. 180, 188 we stated that "an unbroken line of cases, too numerous for complete citation, holds that this impeachment device is strictly limited to 'convictions' and that it is impermissible to reveal that a witness has been merely accused of or arrested for a crime."

What is frequently overlooked, by the use of these overly broad statements of the rule, is that there is at least one circumstance where the fact that a witness is accused but not yet convicted of a crime may be revealed on cross-examination.[3] In 1931, the Supreme Court held that the right of a defendant to confront witnesses against him, U. S. Const. amend. VI, includes the right to ask, on cross-examination, where the witness is residing in order to reveal if he is in the custody of the State because of pending criminal charges. In *Alford v. United States*, 282 U. S. 687, defense counsel asked a state witness "Where do you live?"

---

1. Kremen v. Rubin, 139 Md. 682, 692; Bonaparte v. Thayer, 95 Md. 548, 560; Nelson v. Seiler, 154 Md. 63, 68.

2. In McLaughlin v. State, 3 Md. App. 515, 524; Hurley v. State, 6 Md. App. 348, 355; Kable v. State, 17 Md. App. 16, 31; Burgess v. State, 161 Md. 162, 170. The following cases involved cross-examination of a defendant but have broad language, applying to all witnesses: Niemoth v. State, 160 Md. 544, 557; Duffy v. State, 151 Md. 456, 463-470.

3. The Maryland cases which state that indictments may never be used for impeachment do not fall within the Alford v. United States, 282 U. S. 687 exception because the criminal charges were not currently pending at the time the witness testified and thus there was no possibility of coercion to testify in exchange for favorable treatment from the State.

The trial judge sustained an objection to this question on the ground that since the witness had not yet been convicted of a crime, the fact that he was currently in the custody of federal marshalls should not be brought out on cross-examination. Counsel argued that this fact should be revealed " 'for the purpose of showing whatever bias or prejudice he may have.' " In reversing the trial court, the Supreme Court pointed out:

> "But counsel for the defense went further, and in the ensuing colloquy with the court urged, as an additional reason why the question should be allowed, not a substitute reason, as the court below assumed, that he was informed that the witness was then in court in custody of the federal authorities, and that that fact could be brought out on cross-examination to show whatever bias or prejudice the witness might have. The purpose obviously was not, as the trial court seemed to think, to discredit the witness by showing that he was charged with crime, but to show by such facts as proper cross-examination might develop, that his testimony was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecution. . . . Nor is it material, as the court of appeals said, whether the witness was in custody because of his participation in the transactions for which petitioner was indicted. Even if the witness were charged with some other offense by the prosecuting authorities, petitioner was entitled to show by cross-examination that his testimony was affected by fear or favor growing out of his detention." 282 U. S. at 693.

The right to cross-examine such witness is for the purpose of exposing the witness' motivation in testifying. Although the trial judge has wide discretionary control over the *extent* of cross-examination upon particular topics, the denial of

cross-examination altogether, or its arbitrary curtailment upon a proper subject will be grounds for reversal. *McCormick on Evidence*, 2nd ed., p. 46. In *Davis v. Alaska*, 415 U. S. 308, 316, the Court stated:

> "The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore Evidence § 940, p 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."

It is important to note that such examination is permitted only for a limited purpose. Mr. Justice Stewart wrote a concurring opinion to emphasize that point in *Davis, supra,* at 321:

> ". . . the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the *general credibility* of a witness through cross-examination about his past delinquency adjudications or criminal convictions." (Emphasis added).

He pointed out that the majority opinion limited the necessity of permitting such examination "to show the existence of possible bias and prejudice. . . ." *Id.* at 317.

The test of admissibility, therefore, is whether the question asked is directed at eliciting from a prosecution witness the fact that he may be under pressure to testify favorably for the State, as when he is under formal

accusation, and/or incarceration awaiting trial. We do not mean to imply that any time a witness testifies against a criminal defendant his entire record of previous arrests becomes relevant to the inquiry. Only where there is some present possibility of coercion should such cross-examination be allowed. If it should appear that the cross-examination is directed simply at casting the witness in the suspicious light that falls upon anyone under formal accusation, the trial judge must not allow it.[3A] Yet cross-examination of witnesses in such instances is exploratory in nature and presumptively proper. The examiner need make no proffer as to the purpose of his inquiry:

> "Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. *For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. . . .* It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. . . . To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial. . . . In this respect a summary denial of the right of

---

**3A.** An example of objectionable cross-examination in this regard would be an attempt to elicit the nature of the offense, the amount of bond set, etc. The gravity of the charge is not material to the permissible inquiry as to possible inducements or coercive pressure which might cause a witness to falsely testify.

cross-examination is distinguishable from the erroneous admission of harmless testimony." *Alford v. United States*, 282 U. S. at 692.

Apparently we must view objections to such exploratory questions with a jaundiced eye.

### The Issue of Cross-Examination

The facts at issue in the case before us are remarkably akin to those in *Alford v. United States, supra.* Appellants, Isaac Newton Johnson and Charles Terrell Walters, were convicted by a jury in the Circuit Court for Allegany County of murder, attempted robbery with a deadly weapon, assault and the use of a handgun in the commission of a crime. A State's witness testified that he was told by Walters that he and Johnson had participated in previous holdups and that they had planned one for the night in question but "it didn't go down right. We had to shoot the man." Counsel for appellant Walters asked this witness on cross-examination:

"Where are you living at the present time?"

The State objected to this question, explaining at the ensuing bench conference:

"This man is under indictment for three B & E's, two larcenies, all of which occurred subsequent to this occasion, and he is incarcerated in the Washington County Jail. But the fact he's (indecipherable) is the same as if the Defendants were on the stand."

It is apparent that the counsel for the State applied the same restriction to cross-examination of a witness that is applicable to cross-examination of an accused. The colloquy that followed indicates that the court also fell under the same misapprehension. Upon finding that the witness, though presently accused, had never been convicted, the trial judge refused to permit appellant to show where the witness was "currently residing" for the reason that:

"I don't believe you can do indirectly what you can't do directly."

The two issues decided in *Alford, supra,* were, therefore, precisely those before the court below. First, was the naked question, "Where are you living at the present time?", proper cross-examination? And, secondly, was it permissible for the defendant to reveal by that device that criminal charges were pending against the witness, or could he only cross-examine as to actual criminal convictions?

### Cross-Examination as to Residence

The *Alford* Court, at 692-693, said:

> "The present case, after the witness for the prosecution had testified to uncorroborated conversations of the defendant of a damaging character, was a proper one for searching cross-examination. The question 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed."

The right to cross-examine witnesses as to place of residence is generally recognized, 37 A.L.R.2d 737, although we are unaware of any case in Maryland enforcing that right.[4] The importance of such seemingly unimportant information was reemphasized by the Court in *Smith v. Illinois, supra,* 390 U. S. at 131:

> "The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself."

This right may only be denied in the exceptional

---

4. While recognizing both Alford, *supra,* and Smith v. Illinois, 390 U. S. 129, in a cryptic single sentence explanation, we treated the denial of that right as harmless error in Mills v. State, 12 Md. App. 449, 460.

circumstance where a witness has been intimidated and is in genuine fear for his safety. *Cf. Beasley v. State*, 271 Md. 521.

## Accused and in Custody as Motivation

An "additional" reason for eliciting the witness' residence, according to *Alford* at 693, is to show that the witness was in the custody of law enforcement authorities, thus revealing a possible motivation to testify favorably for the State. Although far from clear in the record of the case at bar, we discern from the bench conference that appellant may have been unaware of his right to question the witness about pending cases. Thus, as observed by the court, he may have been trying to do indirectly what he thought he could not do directly, *i.e.*, show that the witness was in jail pending trial but not yet convicted. Nonetheless, it was error for the judge to deny the right to ask about the witness' residence, whether the denial was based upon his discretionary right to restrict exploratory questioning on irrelevant issues, or was based upon the court's assumption that it was impermissible to reveal that the witness was under indictment and in the custody of the State. We hold, pursuant to the dictates of *Alford v. United States, supra*, that a criminal defendant has a right to inquire of a witness testifying against him where he lives and to elicit the fact that the witness is under indictment or in police custody in order to show the witness' bias, within the limitations set forth above.

## Harmless Error

Obviously cases have held that if sufficient evidence on the subject is otherwise admitted, the prejudice of an erroneous ruling on right to so cross-examine may be overcome, *e.g., United States v. Teller*, 412 F. 2d 374, *cert. den.*, 402 U. S. 949; *United States v. Carminati*, 247 F. 2d 640, *cert. den.*, 355 U. S. 883; and see *Mills v. State, supra.*

And indeed the State here so contends. It claims that if the preclusion of the cross-examination was error, it was harmless because the fact of the witness' confinement in

police custody was brought out subsequently by the
following testimony elicited from the witness:

> "Q Did you talk to Mr. Boone about this case?
>
> A I was at the Washington County Jail, and he
> had just got done talking to Mr. Johnson, and he
> had come up to me and asked me if I was involved
> in this case as a material witness. I didn't know
> what to say. I just said, 'I don't know nothing about
> it.' "

We do not agree that this was sufficient to overcome the
judge's error in sustaining the State's objection to defense
counsel's residence inquiry. This statement neither
expressed nor implied residence at the jail, temporary or
permanent, since there is no indication of whether the
witness was a visitor, resident or guest there. To the
contrary, it seems to show his presence resulted from his
role as a "material witness" rather than as an inmate.

The State also contended on appeal that *Alford* was not
apposite because appellant's underlying purpose in inquiring
about his residence must have been "to show that he had
been either charged or convicted of previous crimes,"
because the appellant mistakenly thought the witness was
on parole. We do not so read the testimony to which the
State points.[5] True, no express purpose for the inquiry was

---

5. "Q And where did you say you were living at the present time?

A When I was working at The Hat?

Q No, now.

A Now? Well I had lost my house over this. My wife is staying with
her parents in Mt. Alto, Pennsylvania. But I was living 321 Mitchell
Avenue.

Q Where are you living at the present time?

MR. HOLLYDAY: May I approach the bench?

BENCH CONFERENCE:

MR. HOLLYDAY: This man is under indictment for three B
& E's, two larcenies, all of which occurred subsequent to this occa-
sion, and he is incarcerated in the Washington County Jail. But the
fact he's (indecipherable) is the same as if the Defendants were on the
stand.

MR. MANGES: We're entitled to know where he's living. And
also he's on parole isn't he?

proffered, but as we have indicated, appellant is not required to do so since he has a right to explore in this area. *Alford v. United States*, 282 U. S. at 692. Indeed, if pressed to determine the purpose of appellant's exploration, we would assume that he hoped to show the influence and pressure to testify favorably for the State upon a witness incarcerated pending a parole violation hearing. We, do not find the error harmless beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18; *Dorsey v. State*, 276 Md. 638.

## Walters

Appellant Walters raised two issues. The first we have

---

MR. HOLLYDAY: He has never been convicted to a crime in his life.

MR. MANGES: Never been convicted?

MR. HOLLYDAY: No sir.

MR. MANGES: My information is he is . . . .

MR. HOLLYDAY: But you can't bring out . . . .

MR. MANGES: He's on parole.

BY THE COURT: Then he's surely been convicted.

MR. HOLLYDAY: He was supposed to be arraigned in Frederick County tomorrow. He's not been convicted.

MR. MANGES: I understand he's on parole.

MR. HOLLYDAY: He is not. He is not. You can ask him if he's ever been convicted of a crime.

MR. MANGES: We feel we can show where he's currently residing.

BY THE COURT: I don't believe you can do indirectly what you can't do directly.

MR. HOLLYDAY: I don't object to him asking him if he's ever been convicted of a crime, but I do object to . . . .

MR. MANGES: I want it on the record.

End Bench Conference

BY THE COURT: The objection of the State to the question is sustained.

Q Have you ever been convicted of any crimes?

A No sir.

Q At no place at all?

A No sir."

treated and upon it we reverse. In the second we find no error. That issue questioned:

"Whether the extra judicial statement allegedly made by one of three people in Walters' company, while driving past Hull's store, that the store 'might be an easy place to hit', was improperly admitted into evidence when Claudis Barger, the witness who reported the statement, indicated that he believed the statement was made by Walters, but he was not positive?"

Appellant's argument is undercut by the facts. The controverted testimony came in as a recital of a conversation among the witness, the appellant Walters and other occupants of an automobile.[6] The fact that the witness was not certain that it was Walters who made the statement does not affect its admissibility, only its weight. Appellant's entire argument is predicated on the presupposition that the statement was made by someone else.

---

**6.** "Q Was there a time that Terry Walters made a comment to you about Hull's Store?

MR. MANGES: We object to leading questions. He's already said now he didn't.

MR. HOLLYDAY: He said at that time.

BY THE COURT: At that time.

MR. MANGES: Object to the question, leading question.

BY THE COURT: Yes. You can rephrase it.

Q What conversations have you had prior to the shooting of Mr. Hull with Terry Walters in reference to the Hull's Grocery Store?

A At one time we was riding by there, and somebody in the car made a comment that might be an easy place to hit.

Q Who was in the car when that was said?

A There was three or four of us in the car.

Q Were these Defendants in the car?

A Yes sir.

Q Now do you recall who made that statement?

A I believe it was Terry. I'm not sure. I'm not positive of it.

MR. MANGES: We move to strike.

BY THE COURT: Be denied."

## Johnson

Appellant Johnson raised only one issue on appeal and that questioned the sufficiency of the evidence. Our review of the evidence shows that it included the testimony of three positive eyewitnesses who identified him as the gunman at the robbery scene. Even one would have been sufficient to warrant a finding of guilt by the jury.

## Mandate

As indicated, we reverse the judgments convicting appellant Walters and remand the case for a new trial. However, we affirm the conviction of appellant Johnson because, though jointly tried, he did not raise the question of denial of cross-examination on his appeal either by brief, Md. Rule 1046 f, or at oral argument. *State Roads Comm. v. Halle,* 228 Md. 24, 32.

> *As to appellant Walters, judgments reversed.*
> *Case remanded for a new trial.*
> *One-half costs to be paid by Washington County.*
> *As to appellant Johnson, judgments affirmed.*