585 A.2d 274

**Harry Whinna LANCASTER**

v.

**STATE of Maryland.**

No. 299, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Feb. 6, 1991.

Certiorari Granted May 1, 1991.

**76**

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Former Public Defender, on the brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Robert W. Hamilton, State's Atty. for Allegany County, Cumberland, on the brief), for appellee.

Submitted before WILNER, C.J., BLOOM, J., and JAMES S. GETTY, Judge (Retired) Specially Assigned.

BLOOM, Judge.

Appellant, Harry Whinna Lancaster, was convicted by a jury sitting in the Circuit Court for Allegany County (Sharer, J.) of an unnatural or perverted sexual practice under Md.Ann.Code, art. 27, § 554, and for that offense received the maximum penalty: 10 years imprisonment and a fine of $1,000. Five years of the prison term were then suspended in favor of 5 years probation. Appellant was also convicted of a fourth degree sexual offense (Md.Ann.Code, art. 27, § 464C(a)(2)) for which the court likewise imposed the maximum penalty: one year imprisonment and a $1,000 fine, with the term of imprisonment to run concurrently with the term imposed for the violation of § 554.

### Facts

The victim, Louis W., was 15 years old in July 1988 when he met appellant, a 53–year–old who suffered from severe asthma and carried an oxygen machine with him. According to the victim, at their first meeting appellant bought him food at McDonald's and paid for an evening of skating. On another occasion, the boy visited appellant's home, where he was shown several guns.

Several days later, Louis visited appellant's home again, and he and appellant watched an X-rated video tape, after which appellant performed fellatio on him. According to the victim this routine recurred every Monday, Wednesday, and Friday evening until 23 January 1989, when he went to the police.

Appellant presented contradictory evidence. Grant Van Pelt, who rented a room in appellant's home from April until August 1988, testified that the victim came to appellant's home four days at most, and that he, Van Pelt, had never seen the boy in the home during the week. Van Pelt also testified that for three weeks in October 1988 appellant was stricken with the flu and asthma. During this time, Van Pelt, who had moved back into appellant's home in order to care for him, never saw the victim. Even after appellant recovered, Van Pelt, who continued to eat his evening meal at appellant's home, never saw the victim in appellant's home.

Additionally, John Williams testified that he rented a room in appellant's home for approximately one month from August until September 1988 and that he was unaware of any visits by a young man on Mondays, Wednesdays and Fridays.

Before trial, the court granted appellant access to the victim's juvenile records wherein it was revealed that the boy had been adjudicated a delinquent child, based upon unauthorized use of an automobile and rape and sexual offense upon an eight-year-old child.

Relying upon Md.Ann.Code (1989 Repl.Vol.) Cts. & Jud. Proc. Art., § 3-824(b,c), the trial judge forbade any reference at trial to any aspect of the juvenile adjudication or disposition. Furthermore, because the victim refused to waive his psychotherapist-patient privilege, counsel was not allowed to impeach him with statements he had made to psychologists. The court also sustained the State's objection to the testimony of two of the boy's doctors pertaining

to their conversations with him, as well as one doctor's expert psychological opinion.[1]

Appellant alleged, during the suppression hearing, that a certain inculpatory statement he made to the police, concerning his relationship with the victim, had been improperly induced. The trial court found that the statement was made freely and without promise of reward and denied appellant's motion.

Finally, the trial court overruled appellant's objection to the State being allowed to impeach him with a prior conviction for distribution of marijuana. Appellant alleges that because of this ruling he decided not to take the stand on his own behalf.

Appellant noted this timely appeal, wherein he asserts:

1. The conviction and sentence for perverted sexual practice must be merged into the conviction and sentence for fourth degree sexual offense.

2. The trial judge erred by refusing to permit appellant to ask the complainant on cross-examination whether he was a "sexual virgin" or had had "sexual encounters" before meeting plaintiff.

3. The trial judge's restrictions on cross-examination of the complainant effectively denied appellant his right to impeach his accuser.

4. The trial judge's exclusion of relevant testimony effectively denied appellant his right to impeach his accuser.

5. The trial judge erred by denying appellant's motion to suppress an improperly induced statement.

6. The trial judge erred in ruling that the State could impeach appellant with a prior conviction for distribution of marijuana, thereby coercing a waiver of his right to testify in his own behalf.

---

**1.** According to appellant, Dr. Nagalendran was prepared to testify that his expert opinion was that "[the victim] was not truthful all the time."

We agree with appellant's first contention and vacate the sentence for perverted sexual practice because the conviction for that offense merges into the conviction for fourth degree sexual offense. We find no reversible error with respect to the other contentions; consequently, we shall affirm the conviction and sentence for fourth degree sex offense.

We shall deal with each of appellant's arguments, but not in the exact order in which he presented them. Further facts will be set forth in the discussion that follows.

## I

■ Appellant contends that he should not have been convicted separately and sentenced separately for both the unnatural or perverted sexual practices and the fourth degree sexual offense because his conviction for perverted sexual practices (for which he received a 10 year sentence with 5 years suspended) must merge into his conviction for fourth degree sexual offense (which resulted in a one-year concurrent sentence). We agree.

We begin our analysis by noting that "the prohibition against double jeopardy, both under the Fifth Amendment and at common law, bars not only successive trials but also multiple punishment for the same offense." *Slye v. State*, 42 Md.App. 520, 524, 401 A.2d 195 (1979) (citations omitted). In the case *sub judice* we are asked to determine whether the two offenses, arising from the same criminal act, are the same for the purposes of double jeopardy and, if so, which offense merges into the other.

Appellant directs our attention to *State v. Jenkins*, 307 Md. 501, 517, 515 A.2d 465 (1986), wherein the Court of Appeals held that "if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter."

■ The "greater" offense, therefore, is not necessarily the offense for which the greater penalty is provided; it is

the offense with the additional element or elements, and the "lesser" offense is the offense which is an "essential ingredient" of or is included within the other. *Slye v. State*, 42 Md.App. 520, 526, 401 A.2d 195; *see also Simms v. State*, 288 Md. 712, 723, 421 A.2d 957 (1980); *Johnson v. State*, 283 Md. 196, 388 A.2d 926 (1978).

The established test for determining whether two offenses merge is the "required evidence" test. In *Newton v. State*, 280 Md. 260, 268, 373 A.2d 262 (1977), Judge Eldridge, writing for the Court of Appeals, stated:

> Thus, under both federal double jeopardy principles and Maryland merger law, the test for determining the identity of offenses is the required evidence test. If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited.

Md.Code Ann., art. 27, § 554, titled Unnatural or perverted sexual practices, provides, in pertinent part:

> Every person who is convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars ($1,000.00) or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be both fined and imprisoned within the limits above prescribed in the discretion of the court.

With respect to this case, the pertinent language of the statute that defines a fourth degree sexual offense, Md. Ann.Code art. 27, § 464C, reads as follows:

> A person is guilty of a sexual offense in the fourth degree if the person engages ... in a sexual act with

another person who is fourteen or fifteen years of age and the person performing the sexual act is four or more years older than the other person....

Any person violating the provisions of this section is guilty of a misdemeanor and upon conviction is subject to imprisonment for a period of not more than one year, or a fine of not more than $1,000, or both fine and imprisonment.

The definition of a "sexual act" is set forth in art. 27, § 461(e):

"Sexual act" means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse....

The State strenuously objects to the merger of § 464C and § 554, relying on *Schochet v. State*, 320 Md. 714, 580 A.2d 176 (1990), for the proposition that in addition to proving that an unnatural or perverted practice occurred, the State must also prove that it was either nonconsensual, commercial, homosexual, involved a juvenile or not performed in private. *Schochet* involved a sex act between two heterosexual, consenting adults in the privacy of one's home. Contrary to the State's premise, *Schochet* does not require the State to prove additional facts. What *Schochet* holds is that the statute was not intended to apply to, and therefore does not criminalize, consensual heterosexual conduct in private between competent adults. The holding in *Schochet* is inapposite to any issue in the case *sub judice*.

In applying the required evidence test to the two offenses involved here, it is manifest that § 464C requires proof of two facts that § 554 does not, namely that the victim is 14 or 15 years of age and that the accused is at least four years older. In *Ross v. State*, 59 Md.App. 251, 269, 475 A.2d 481 (1984), this Court said that, with respect to those two statutory offenses (but in the context of limitations or penalties rather than merger), that

the additional element required in a fourth degree sexual offense that the victim be "fourteen or fifteen years of

age" determined that crime as the "greater offense" even though the penalty for committing the "lesser included" offense was far greater.

Under art. 27, § 464C, a fourth degree sex offense can be committed in several ways that do not involve the same conduct that is proscribed in § 554. Nevertheless, since the manner in which appellant is alleged to have committed a fourth degree sex offense (a sexual act—fellatio—with a person fourteen or fifteen years of age by a person four or more years order) is the exact same unnatural and perverted sexual practice for which the State sought to punish him under § 554, the two offenses are the same.

In *Nightingale v. State*, 312 Md. 699, 542 A.2d 373 (1988), the Court of Appeals dealt with two separate cases which involved the issue of whether separate convictions and sentences for both child abuse and either second, third, or fourth degree sexual offense were improper where the State relied on and proved the sexual offense to sustain the child abuse conviction. The appellants argued that for double jeopardy purposes their convictions and sentences for child abuse and sexual offenses could not stand because the crimes were the same under the required evidence test. The Court held that each statute encompassed elements that the other did not, but that "when a multi-purpose criminal statute is involved, we refine it by looking at the alternative elements relevant to the case at hand." *Id.* at 705, 542 A.2d 373. Judge Adkins, writing for the Court, explained:

> When, as here, a multi-purpose criminal statute is involved, the court must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of alternative elements that do not apply. It must, in other words, treat a multi-purpose statute written in the alternative as it would treat separate statutes. The theory behind the analysis is that a criminal statute written in the alternative creates a separate offense for each alter-

native and should therefore be treated for double jeopardy purposes as separate statutes would.

*Nightingale,* 312 Md. at 706–07, 542 A.2d 373 [citing *Pandelli v. United States,* 635 F.2d 533, 537 (6th Cir.1980) ].

Although child abuse may be based on physical harm or cruel physical treatment, at both trials the State's theory, as presented in opening statement, closing argument, and the court's instructions, involved sexual child abuse. Thus, the jury in each case could have found the defendant guilty of child abuse based solely on evidence of a sexual offense in some degree. *Id.* 312 Md. at 708, 542 A.2d 373.

In the case *sub judice,* the trial court's instructions, as well as the State's closing argument, made it clear that fellatio was the sexual act alleged under both the fourth degree sexual offense charge and the perverted sexual practice charge. We hold, therefore, that under the facts of this case appellant's conviction and sentence under § 554, unnatural or perverted sexual practices, merged into his conviction and sentence for the greater offense, fourth degree sexual offense under § 464C.

## II

■ Appellant next asserts that it was error for the trial court to refuse to permit him to cross-examine the victim with respect to the victim's past sexual encounters.[2] We stated in *Tipton v. State,* 39 Md.App. 578, 586, 387 A.2d 628 (1978), that "... the balancing of the intangibles—probative value against probable dangers—is essentially a discretionary matter to be determined by the trial judge and in the absence of an abuse of that discretion it will not be disturbed on review."

---

2. During cross-examination of the victim appellant sought to elicit testimony based on the following questions:
    Q. And you were not a sexual virgin at that time, is that correct?
    Q. You claim that you had a sexual encounter with Mr. Lancaster. And was that the first time you had ever had any sexual encounter?
The State objected and the trial court sustained; there was no ensuing bench conference or proffer of evidence.

Upon a motion for judgment of acquittal, appellant argued that Louis's testimony established that, as a matter of law, he was an accomplice, whose testimony required corroboration. Since Louis's testimony tended to show that he was not a willing partner but acquiesced because he was afraid, the court correctly ruled that the question of whether the boy was a victim or accomplice was a question of fact for the jury.

Appellant now argues that in order to prove that Louis was an accomplice and not a victim, evidence corroborating appellant's testimony showing valid consent to appellant's behavior was necessary. Appellant further argues that Louis's consent was a material issue in the case and that makes the fact of his prior sexual conduct relevant.

Appellant argues on appeal that he was only seeking to elicit a "Yes" or "No" answer as to whether the victim had experienced any other sexual encounters, rather than evidence as to specific prior sexual encounters.

In *Giles v. State,* 229 Md. 370, 183 A.2d 359 (1961), the trial court refused to permit the defendant to cross-examine the victim, who claimed she had been raped, about whether she had ever had venereal disease or whether her parents allowed her to go out late at night, for the purpose of proving consent. The Court of Appeals held that the questions as framed did not go to her general character or reputation for chastity. *Id.* at 380, 183 A.2d 359. According to the Court:

> The first question (relating to a venereal disease) would certainly have also permitted a probing into specific acts, and, even if it had been answered in the affirmative, it would have had no probative value on the issue of consent. If in fact the prosecutrix had a venereal disease, she could have contracted it from the defendants....

*Id.*

In the instant case the probative value of the victim's prior sexual conduct for the purpose of proving consent to the alleged homosexual conduct was minimal. Even if he

answered the question as to past sexual experience in the affirmative, that answer would not tend to establish that he consented to and was a willing participant in the homosexual activity that was the crux of this case.

Finding no abuse of discretion, we hold that the trial court properly refused to permit such inquiry.

### III

In his third and fourth assertions of error, appellant complains that the trial court unduly restricted defense counsel in his efforts to impeach the victim's testimony by using information from the youth's juvenile records and from statements the victim made to his psychologists.

The trial court invoked the rule of juvenile confidentiality, § 3–824(b), (c), of the Courts Article, to bar the impeachment use of Louis's recent delinquency adjudication. Because the victim declined to waive the psychotherapist-patient privilege (§ 9–109 of the Cts. & Jud.Proc.. Article of the Maryland Code), the trial court barred the use of the boy's statements to psychologists as well. We shall first deal with the use of Louis's juvenile records before turning our attention to the statements made to his psychologists.

### a.

The law is perfectly clear that it is "impermissible to attack the credibility of a witness by asking him about his past record of juvenile offenses, directly *Braun v. State,* 230 Md. 82 [185 A.2d 905 (1962)], or indirectly, *Westfall v. State,* 243 Md. 413 [221 A.2d 646 (1966)]." *Johnson v. State,* 3 Md.App. 105, 115, 238 A.2d 286 (1967). Indeed, any inquiry, "whether by record or by cross-examination, of determinations of prior juvenile delinquency is impermissible in any *adjudicatory* hearing." *Matter of Alexander,* 16 Md.App. 416, 420, 297 A.2d 301 (1972) (emphasis in original).

Adjudication of delinquency is not a criminal conviction and cannot be used as such for impeachment. For a discussion of the philosophy of juvenile court enactments

*see In re Dwayne H.,* 290 Md. 401, 430 A.2d 76 (1981); *In re Appeal Misc. No. 32,* 29 Md.App. 701, 351 A.2d 164 (1976); *In re Davis,* 17 Md.App. 98, 299 A.2d 856 (1973); *Jackson v. State,* 17 Md.App. 167, 300 A.2d 430 (1973).

■ Despite the unambiguous holdings of *Braun, West-fall,* etc., appellant insists that he should have the right to cross-examine the victim about his juvenile record in order to attack his credibility. He relies on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), for the proposition that cross-examination should be permitted to show bias or ulterior motive notwithstanding a statutory provision that would ordinarily keep the impeaching matter confidential.

We agree with Professor McCormick's statement that [T]he trial judge ... has wide discretionary control over the *extent* of cross-examination upon particular topics, but the denial of cross-examination altogether, or its arbitrary curtailment upon a proper subject will be grounds for reversal. (Emphasis in original.)

McCormick on Evidence, 3rd ed. p. 50.

In *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974), the Supreme Court stated:

The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

It is important to note that such examination is permitted only for a limited purpose. Mr. Justice Stewart wrote a concurring opinion to emphasize that point in *Davis*, 415 U.S. at 321, 94 S.Ct. at 1112:

[T]he Court neither holds nor suggests that the Constitution confers a right in every case to impeach the *general credibility* of a witness through cross-examination about his past delinquency adjudications or criminal convictions. (Emphasis added.)

He pointed out that the majority opinion limited the necessity of permitting such examination "to show the existence of possible bias and prejudice...." *Id.* at 317, 94 S.Ct. at 1111.

As this Court stated in *Johnson and Waters v. State*, 30 Md.App. 512, 516–17, 352 A.2d 371 (1976):

The test for admissibility, therefore, is whether the question asked is directed at eliciting from a prosecution witness the fact that he may be under pressure to testify favorably for the State, as when he is under formal accusation, and/or incarceration awaiting trial. We do not mean to imply that any time a witness testifies against a criminal defendant his entire record of previous arrests becomes relevant to the inquiry. Only where there is some present possibility of coercion should such cross-examination be allowed. If it should appear that the cross-examination is directed simply at casting the witness in the suspicious light that falls upon anyone under formal accusation, the trial judge must not allow it. Yet cross-examination of witnesses in such instances is exploratory in nature and presumptively proper. The examiner need make no proffer as to the purpose of his inquiry.

There is no suggestion in the case *sub judice* that the victim's initial report to the police concerning appellant's actions was made for the purpose of shifting suspicion away from himself, as was the case in *Davis v. Alaska, supra.* Under the circumstances of this case, inquiring into Louis's status as a juvenile delinquent would not have

elicited any testimony giving rise to an argument of either bias or prejudice. Appellant's right to confrontation was not denied when the trial court precluded cross-examination of the victim about his juvenile record.

b.

█ Appellant also asserts that the trial court should have permitted him not only to cross-examine the victim concerning statements he made to his psychologists but also to elicit testimony from the psychologists about those statements.

Defense counsel proffered that he proposed to question Louis and two psychologists about

(1) the boy's statements to one psychologist "that he often lies" and "that he was not truthful all the time," and

(2) his statement to the other psychologist "that he first admitted to police in August '88 that he had sexually abused an eight year old girl but denied this later...."

Counsel also proposed to ask the second psychologist about her having "diagnosed [Louis] as not being truthful all the time."

The court sustained the State's objection to the proposed questions on the ground that the victim had not waived the psychologist-patient privilege set forth in Md.Code Ann., Cts. & Jud.Proc. Art., § 9–109. Appellant's contentions present an issue as to whether a patient's statutory privilege to refuse to disclose or permit disclosure of "communications relating to diagnosis or treatment of the patient's mental or emotional disorder" must yield to the rights of one accused of crime to confront the witnesses against him and to challenge their credibility and, if so, to what extent.

In *Reese v. State*, 54 Md.App. 281, 289, 458 A.2d 492 (1983), the late Judge Lowe, writing for this Court, noted that, when an inquiry that is designed to shed light on the credibility of a witness delves into a matter subject to the statutory protection of § 9–109 of the Courts and Judicial Proceedings Article, "explanatory questions (not violating

the psychiatrist-patient privilege *if* raised) should liberally, *but carefully* be allowed." (Emphasis in original.)

In *Eiler v. State,* 63 Md.App. 439, 492 A.2d 1320 (1985), Judge Robert M. Bell, writing for this Court, after recognizing that the psychiatrist-patient privilege clearly applied to the case, stated that the applicability of the privilege "cannot prohibit the liberal, but careful, allowance of exploratory questions into [the witness's] mental condition for the purpose of testing her credibility." *Id.* at 451, 492 A.2d 1320. Thus, from allowing a liberal, but careful, use of exploratory questions that do not violate the privilege if invoked (*Reese*), we went a step further toward protecting the right of an accused to attack the credibility of a witness against him with exploratory questions into her mental condition despite the privilege.

The factual differences between this case and both *Reese* and *Eiler* render it inappropriate for appellant to rely upon either of those cases. The witness in *Reese,* who had been diagnosed as schizophrenic during one of many hospitalizations at Springfield State Hospital, had a long history of drug abuse and frequent psychotic episodes, with "bizarre, confused and agitated behavior," affecting his contact with reality. The witness in *Eiler* was known to be taking Mellaril and Elavil, prescribed by a psychiatrist whom she saw weekly. Defense counsel proposed to call a physician who could testify, on the basis of the records at the Detention Center and the nature and amount of her medication, as to the witness's psychological diagnosis and the fact that her disorder "could have altered her perception in such a manner as to discredit her testimony."

In the case *sub judice,* there was nothing in appellant's proffer to suggest that Louis was psychotic or, indeed, that he was suffering from any mental disease, disorder, or defect that would affect his perception, memory, or ability to testify truthfully and accurately. What appellant proffered was evidence to the effect that Louis confided to his psychologists that he was not always truthful and that he told one of them that he falsely confessed to a police officer

that he had sexually abused an eight year old child. Such inquiries do not constitute "exploratory questions" into the "mental condition" of the witness to test his credibility.

Appellant also relies on *State v. Cox*, 298 Md. 173, 468 A.2d 319 (1983). That reliance is misplaced. *Cox* did not involve any privileged communication, but did involve the right of an accused to cross-examine his accuser with respect to a prior falsehood. Cox was accused of assault and rape, and defense counsel sought to introduce testimony from the victim that she had previously accused a man of assault; appeared at his trial and repeated the accusation on direct examination; but then, on cross-examination, retracted the accusation and admitted that she had not told the truth. As the Court of Appeals pointed out, defense counsel "sought to establish that she was lying by showing that she had on a prior occasion, under oath, charged another with criminal assault and recanted that charge under cross-examination. 298 Md. at 177, 468 A.2d 319. In *Cox*, the State relied on *Rau v. State*, 133 Md. 613, 105 A. 867 (1919), in which the Court had upheld the lower court's denial of defense counsel's right to attack the credibility of the prosecuting witness by showing that on a prior occasion she had made a false accusation of a sexual offense.

The same analysis used by the Court of Appeals to distinguish *Cox* from *Rau* can also be used to distinguish *Cox* from the instant case.

As the Court in *Cox* pointed out:

In *Rau*, the defendant attempted to attack the prosecutrix's credibility by cross-examining her and her father. The trial court sustained the State's objection to the following question on cross-examination of the prosecutrix:

"Q. Didn't you about a year ago tell your mother that a man by the name of Horton who was your neighbor, had put his person in your person." (Citations omitted.)

This question obviously did not relate to the witness' credibility. Thus, the Court held that this question was improper because it did not tend to impeach her general character for truth and veracity. The trial court also properly sustained the State's objection to the following question asked of the prosecutrix's father:

"Q. You have been sworn before; I want to ask you, Mr. Lohmeyer, if your daughter Martha, the prosecutrix in this case, didn't tell you that a man by the name of Hutton, a neighbor across the road where you lived about a year ago, that about that time that this Mr. Hutton had sexual intercourse with her, and if she didn't thereafter tell you that it was not so and that she had told a lie on Hutton (Horton)?" (Citations omitted.)

This question reached a specific act of untruth relevant to the prosecutrix's credibility; however, the inquiry was made during the examination of another witness, not on cross-examination of the one charged with the untruth. The Court alluded to the significance of asking this question of the prosecutrix rather than her father:

It will be seen that the prosecuting witness was not asked on cross-examination whether she had told a lie concerning the alleged intercourse with Hutton or Horton, but whether or not she had told her mother a year ago that a man by the name of Horton, a neighbor of her, had sexual intercourse with her. (Citations omitted.)

As this passage suggests, the facts in *Rau* disclosed a question that may have been proper for cross-examination of the witness. However, counsel failed to cross-examine the witness specifically about an act reflecting on her credibility and erred in attempting to broach the subject through extrinsic testimony.

In the case *sub judice,* instead of asking Louis whether on a specific occasion he had confessed to police and later recanted that confession under oath, appellant sought to introduce evidence of a conversation between Louis and a psychologist in which Louis told the psychologist about a

confession he made to the police and later recanted under oath. While the right to invoke a privilege is subordinate to the right of the accused to attack the credibility of the accusing witness, *Eiler v. State, supra,* what appellant proffered was a needless violation of the privilege, that did not directly attack the credibility of the victim but did indirectly allude to an alleged juvenile offense.

We are not called upon to determine whether refusal to permit appellant to ask Louis directly whether he had confessed to the police that he sexually abused an eight year old child and then recanted the confession under oath would have constituted an abuse of discretion. What we now hold is that the court did not err in refusing to permit appellant to inquire into privileged communications between Louis and his psychologists about what the boy told them he had told the police and later denied. The psychologists were the wrong persons to ask about what Louis told the police and then the court; and to ask Louis about what he told the psychologists instead of what he told the police and the court would be to ask the wrong question of the right person. In either event, the matters appellant proposed to inquire into did not justify violating the patient-psychologist privilege.

## IV

Appellant next contends that the trial court erred by denying his motion to suppress an improperly induced statement. According to the record, on 23 January 1989, the victim's mother contacted police and told Officer Schulten that she did not want appellant to have any further contact with her son.

That same day or the next day, Schulten telephoned appellant and left a message on his telephone recorder telling him that it would be to his advantage to come to the police station and talk to her. Schulten admitted leaving a recorded message for appellant, but testified that she could not recall with specificity the exact words used.

On 24 January 1989, Louis's mother informed Officer Schulten that appellant was attempting to contact her son, whereupon Schulten and another officer went to the mother's residence. Once there, Schulten observed appellant walking toward that residence. Appellant stated that he was there to return some articles to Louis and that he wanted Schulten to hear his side of the story.

Appellant, driving his own car, followed the officers to the station house. After waiving his *Miranda* rights, appellant gave an incriminating oral statement concerning his relationship with Louis. Appellant stated that he thought if he discussed "this stuff" with Schulten it would be to his advantage; that if he cooperated, the charges made by Louis would not be brought, but that that specific promise had not been made.

The trial judge found that there was no indication that appellant had been misled and that the statement was made freely, without promise of reward, and subsequently denied the motion to suppress.

Appellant argues on appeal that since there was no rebuttal to appellant's testimony that he was told his cooperation would redound to his advantage, the State did not sustain its burden of showing that his ensuing statements were not wrongly induced.

In *In re Lucas F.*, 68 Md.App. 97, 510 A.2d 270 (1986), this Court said:

> It clearly emerges that under Maryland criminal law, independent of any federal constitutional requirement, if an accused is told, or it is implied, that making an inculpatory statement will be to his advantage, in that he will be given help or some special consideration, and he makes remarks in reliance on that inducement, his declaration will be considered to have been involuntarily made and therefore inadmissible.

68 Md.App. at 105, 510 A.2d 270 [citing *Hillard v. State*, 286 Md. 145, 153, 406 A.2d 415 (1979)].

In *Hillard* the Court of Appeals held that the following statements made by the interrogating police officer, in the presence of counsel, constituted an improper promise to the defendant in exchange for his statement:

[I]f you are telling me the truth about your involvement in the occurrence, I will go to bat for you to the extent that I will tell the State's Attorney's office and the Court, number one, that you have cooperated, number two, you have told me the truth, and number three, I believe you were not knowledgeable as far as the murder was concerned.

286 Md. at 153, 406 A.2d 415.

■ In determining whether the hearing judge's ruling on the suppression motion was correct, we are required to make an independent, reflective constitutional judgment based on the facts presented at the suppression hearing. We must give great weight to the hearing judge's first level finding of facts, but we must make our own independent judgment as to what to make of those facts. *See Walker v. State*, 12 Md.App. 684, 280 A.2d 260 (1971), and the cases cited therein at 691 through 696, 280 A.2d 260. Having done so in the case *sub judice*, we are satisfied that the hearing judge correctly determined that the detective's procedure as outlined was free of inducement. The officer's comments to the effect that it would be to appellant's advantage to come to the police station did not rise to the level of unlawful inducement if, in fact, it actually induced appellant to do anything.

## V

■ Lastly, appellant contends that the trial court erred in ruling that the State could impeach appellant with a prior conviction for distribution of marijuana, thereby coercing a waiver of his right to testify in his own behalf.

According to the record, appellant made a motion *in limine* to exclude evidence of any prior convictions. The State made known its intention to cross-examine appellant

with respect to his convictions based on a second degree sexual offense and distribution of marijuana. The court refused to permit any questioning based on the sexual offense, but set forth its intention to allow questioning based on the distribution of marijuana conviction, stating that it was "an offense sufficiently tinged with criminal misconduct manifesting a blatant disregard for the law."

The State here contends that a ruling on a motion *in limine* is insufficient to preserve an objection and appellant's last issue has not been properly presented to this Court for review. An identical argument was made by the State in *Passamichali v. State*, 81 Md.App. 731, 569 A.2d 733 (1990), wherein this Court held that one may challenge on appeal an *in limine* ruling when "appellant adequately preserved his constitutional claim by notifying [the trial judge] of his desire to testify and of the sole reason for his refusal to testify." *Id.* at 741, 569 A.2d 733.

In the case *sub judice*, the sole reference made by appellant to the trial court's decision to admit testimony concerning appellant's previous conviction was when counsel stated, "because the ruling will depend on whether or not...." Counsel neglected to complete his comment, and we are not disposed at this time to engraft what we think counsel meant to say or should have said. Suffice it to say that when appellant declined to testify he made no constitutional claim that would have preserved this issue for our review.

Furthermore, unlike the situation in *Passamichali*, where there was no discretion to be exercised by the trial court as to using a conviction for an infamous crime for impeachment, this case involves a matter of discretion. As pointed out by the Supreme Court in *Luce v. United States*, 469 U.S. 38, 41, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984), a reviewing court cannot very well weigh the probative value of a prior conviction against the prejudicial effect to the defendant without knowing "the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify." The Court noted that a

trial judge might, in the exercise of judicial discretion, alter a previous *in limine* ruling.  Furthermore, the Court said:

> When the defendant does not testify, the reviewing court also has no way of knowing whether the Government would have sought to impeach with a prior conviction.  If, for example, the Government's case is strong, and the defendant is subject to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction.

*Id.* at 42, 105 S.Ct. at 463.  In addition to those reasons for holding that a ruling on a motion *in limine* cannot constitute reversible error, we pointed out in *Offutt v. State*, 44 Md.App. 670, 677, 410 A.2d 611 (1980), *cert. denied*, 291 Md. 780 (1981), that although it is entirely possible that the ruling motivated the defendant not to testify, it is also possible that he had no intention of testifying regardless of the ruling on the motion.  It is also possible that the State would have changed its position and not used the conviction. "We do not rule on academic questions." *Id.* 44 Md.App. at 677, 410 A.2d 611.  *See also Jordan v. State*, 82 Md.App. 225, 231–35, 571 A.2d 238 (1990).

We hold, therefore, that the issue of whether appellant's prior conviction for distribution of marijuana could properly have been used to impeach him if he had testified was not preserved for appellate review.

SENTENCE FOR UNNATURAL AND PERVERTED SEXUAL PRACTICE VACATED; CONVICTION AND SENTENCE FOR FOURTH DEGREE SEXUAL OFFENSE AFFIRMED.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY ALLEGANY COUNTY.